## ALASKA INDUSTRIAL BOARD et al. v. ALASKA PACKERS ASS'N.

### No. 12512.

United States Court of Appeals
Ninth Circuit.

Jan. 31, 1951.

J. Gerald Williams, Atty. Gen. of Alaska, for appellant Alaska Industrial Board.

Henry Roden, Roy E. Jackson, and Wm. L. Paul, Jr., Juneau, Alaska, for appellant, Peterson.

Faulkner, Banfield & Boochever and R. Boochever, Juneau, Alaska, for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

Peterson and the Alaska Industrial Board, hereafter called the Board, appeal from a judgment of the District Court for the Territory of Alaska holding that the Board is without jurisdiction to award Peterson disability compensation under the

Alaska Workmen's Compensation Act.[1] The claim is for injuries sustained by Peterson when employed as a sailor deckhand on a motor towboat on navigable waters in or near the Territory of Alaska.

The Board had awarded compensation to Peterson and the Alaska Packers Association, hereafter called Packers, appealed to the district court which, on an excellently reasoned opinion, rendered judgment setting aside the award and enjoining the Board from attempting to enforce it.

Peterson's injuries were from a purely maritime cause, the result of a straining of his back in carrying a sack of coal from the ship's bow to the ship's galley. The towboat had been and was to be used by the Packers in towing fishing boats and their fishermen from the Packers' stationary receiving station at Naknek on Kvichak, an inlet of Bristol Bay, Alaska, some twenty miles or more out to the fishing grounds in Bristol Bay and later, at the end of the fishing day, returning to tow the boats and fishermen and their catch back to the receiving station. However, the towboat was not engaged in any fish towage for the Packers at the time Peterson's injuries were sustained and it does not appear that the boat, owned by a California corporation, then was in the territorial waters of Alaska.

█ The obligations and correlative rights of the owner of a vessel to the members of her crew constitute one of the most important of the "characteristic features of the general maritime law" which the decision in Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 529, 61 L.Ed. 1086, held must not be modified by state legislation.[2]

█ The Osceola, 189 U.S. 158, 175, [23 S.Ct. 483, 487, 47 L.Ed. 760] held that for such an injury as that sustained by Peterson, the ship and owner "are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued." It further held that the vessel and owner are liable for damages to a sailor arising from the unseaworthiness of the vessel or her appliances. To this the Jones Act, 46 U.S.C.A. § 688, added the owner's liability to the seamen for negligently caused injuries. The present characteristic feature of the general maritime law is that the owner is obligated to his seamen in all these situations. To Peterson, who suffered from no negligence or unseaworthiness, the Packers are liable by maritime law for no more than his wages to the end of the fishing season and his maintenance and cure.

The added liability of the owner to this seaman under the Board's award includes the sum of $3,450 for permanent total disability and at least doubles the ship's operating cost in this respect. Per contra, had the seaman had a complete cure with no subsequent disabilities, he would have recovered as Alaska compensation but 65% of what the owner would have to pay him in wages under the maritime law. It is obvious that here is clear modification by state legislation of one of the paramount characteristic features of the general maritime law.

Peterson contends that the Jensen case is not applicable because (a) the maritime occupation of the vessel was not in interstate or foreign commerce and (b) the daily voyage is for a distance of but 20 miles from Naknek. Both contentions are disposed of adversely by the Supreme Court in London Guarantee & Accident Co. v. Industrial Accident Commission, 279 U.S. 109, 123, 49 S.Ct. 296, 73 L.Ed. 632, where the seaman's voyage was on a vessel carrying sportsmen to a fishing ground between 3 and 5 miles off the City of Santa Monica, California, and his injury was held not within that state's workmen's compensation law.

---

1. Laws of Alaska, Ex.Sess.1946, p. 49 et seq., 2 A.C.L.A. § 43–3–1 et seq.

2. The Jensen decision was a five-four decision, but there is language in Justice Holmes' dissent which is construable as recognizing the principles of the majority as sustained in a case of injuries to a seaman. It is significant that Justice Holmes did not dissent in the London Guarantee case, considered infra.

The London Guarantee opinion distinguishes that case from its decisions in Sultan Railway & Timber Co. v. Department of Labor, 277 U.S. 135, 48 S.Ct. 505, 72 L. Ed. 820; Millers' Indemnity Underwriters v. Braud, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470, and Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, relied upon by appellants, on the ground that in none of those cases was the injured man exclusively engaged in the operation of a vessel in navigable waters. They are described as cases of an "amphibious nature." Our decision in Alaska Packers Ass'n v. Marshall, 9 Cir., 95 F.2d 279, is similarly distinguishable. The employee there had an amphibious occupation, both on shore and at sea. Likewise in Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246. There Davis was employed both in the land occupation of cutting steel from a bridge and recutting it on a barge. His amphibious occupation brought him in the twilight zone of occupation which had nothing to do with the navigation of a vessel.

So also the recent decisions in Moores's Case, 323 Mass. 162, 80 N.E.2d 478, affirmed Bethlehem Steel Co. v. Moore 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417, where an iron worker and rigger was employed both on land and on a barge, and Baskin v. Industrial Accident Commission, 89 Cal. App.2d 632, 201 P.2d 549, reversed 338 U.S. 854, 70 S.Ct. 99, where the shipyard worker's duties were predominately on shore. In all these cases it is the amphibious character of the *employee's* duties which brought him within the "twilight zone" of the Davis case, supra. None was based on the mere amphibious character of the *employer's* business or businesses. Peterson's employment solely as a deckhand on his vessel in navigable waters is in "clear daylight" not amphibious.

Appellants argue that Peterson, solely occupied in navigation, with no shore duties, became a laborer in the processing of fish, because the navigation of his vessel involved the transport of fish to the cannery—that is to say, because the employer's business is amphibious. Such a holding by us would be applicable in the great pre-war lumber trade between Oregon ports and Shanghai, China. The deckhand on a steamer would be deemed a laborer in the business of selling lumber and subject to the Oregon compensation law because his employer bought his lumber and assembled it at an Oregon port and carried it in his own vessel, which the sailor assisted in navigating, to his employer's own yard in China and there sold the lumber so transported. Under the London Guarantee case, supra, such a trade is none the less analogous because of the greater distance of transport or that it is in foreign commerce. It is only in the amphibious cases that the factor of nearness of the occupation from shore is treated as pertinent.

No case is cited holding or stating that a sailor, engaged solely in, say, a deckhand's service in the navigation of the ship, becomes a different kind of employee because of the general character of the employer's business. So to hold would be to deem the Jensen case overruled in its entirety, despite the Supreme Court's statement in Standard Dredging Corp. v. Murphy, 319 U.S. 306, 309, 63 S.Ct. 1067, 87 L.Ed. 1416, that is continues to have some vitality as to state workmen's compensation laws.

The judgment is affirmed.